IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| John H. King, II, | ) | No. CV-11-2111-PHX-GMS (BSB) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

John H. King, II has filed a timely amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree murder, aggravated assault, and fleeing the scene of an accident. (Doc. 15.) King asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated because he is actually innocent of second degree murder (Ground One), there is newly discovered evidence that he did not commit murder (Ground Three), the prosecutor engaged in misconduct (Ground Four), and there was a miscarriage of justice based on the actions or inactions of the police and prosecutor (Ground Five). King also alleges several instances of ineffective assistance of counsel (Ground Two). Respondents contend that grounds one, three, four and five are procedurally defaulted and barred from review. Respondents further argue that King's claims of ineffective assistance lack merit. The Court agrees. For the reasons set forth below, the Court recommends that King's petition be denied and dismissed with prejudice.

/ / /

/ / /

1   **I. Factual and Procedural Background**

2            The facts giving rise to King's challenged convictions are summarized from the

3   Arizona Court of Appeals' memorandum decision.[1]

4            On November 8, 2002, Robert W. and his brother, Ivory G., went to the
     AmVets bar where they met with some other people, including Craig G.
5        and Paul R.  Charlotte L., the mother of Ivory's child, was also at the bar
     that evening with her cousin, Akina L.  Charlotte spoke with Ivory and
6        bought him a drink.

7            [King], who also had a past relationship with Charlotte L., approached
     Ivory G., and, referring to Charlotte L., asked, "What is she to [you]?"
8        Ivory G., who knew [King] replied, "She ain't nothing to me, I just have
     a baby by her."  Ivory G. then went to speak to Robert W.  Charlotte L.
9        followed and asked Ivory G. to dance.  Ivory G. and Charlotte danced
     and had another drink.

10

11           King, who was apparently upset with Charlotte L., approached her and
     warned, "Bitch, don't get [someone] killed up in here," and then he
12       showed her a gun. [King] then approached Ivory G. again, pressed
     something up against his back that Ivory G. believed was a gun, and
13       threatened, "I'm going to put some of these hollow points in you."

14           Following this incident, Charlotte L. went to her van with Akina L.
     [King] followed Charlotte L. out of the bar to her van.  Charlotte L. was
15       afraid and tried to call her husband on her cell phone. [King] grabbed
     her cell phone from Charlotte L's hand, threw it to the ground, and
16       smashed it with his foot. [King] then pointed a gun at Charlotte L. and
     said, "Bitch, I'll blow your head off . . . ." (Tr. Oct. 28, 2004 at 137-38.)

17           Robert W. and Ivory G. were walking down the sidewalk and [King]
     approached them and said, "[Who's] trying to protect this bitch?"  A
18       scuffle broke out and several gunshots were fired.  Robert W. was shot
     in the right hand and through the torso.  He subsequently died from his
19       wounds.  Ivory G. was shot in the neck and back, but he survived.

20           [King] drove away from the scene in his Cadillac. The police pursued
     [King] with their lights and sirens activated. [King] drove through the
21       neighborhood, pulled in front of his house, exited his vehicle, and ran
     toward the back of the house.  Police officers yelled for [King] to stop,
22       but he simply looked back, and then continued to run. [King] was
     wearing a long trench coat, dark pants, and a striped shirt.  As he ran,
23       [King] took off his trench coat and dropped it as he jumped over a fence.

24

25  _____

26       [1] King does not challenge the appellate court's recitation of the facts and the state court's
factual determinations are "presumed to be correct" unless petitioner "rebut[s] the presumption
27  of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Additionally, the
trial transcripts support the appellate court's statement of fact.  (Respondents' Exhs. B-I, docs.
28  17-18.)

Eventually, the police caught up to [King], who had blood on his face and hands, and took him into custody . . . .

The police swabbed residue from [King's] hands, which revealed the presence of gunpowder.  The right pocket of [King's] trench coat also contained gunshot residue and had a bullet hole consistent with a gun being fired from inside of the pocket.  DNA analysis of several blood stains on the trench coat and in the street at the scene matched Robert W.'s DNA. Samples taken from biological material on the collar of the trench coat matched [King's] DNA.

(Respondents' Exh. A, doc. 16-1 at 3-6.)

King was indicted by a grand jury in the Arizona Superior Court, Maricopa County and charged with one count of second degree murder, a class one dangerous felony; one count of attempted second degree murder, a class two dangerous felony; one count of aggravated assault, a class three dangerous felony; and one count of unlawful flight from a law enforcement vehicle, a class five felony. (Respondents' Exh. A at 5, doc. 16-1 at 6) The State subsequently alleged that King had five prior felony convictions.  (Respondents' Exh. A at 5, doc. 16-1 at 6.)

In addition to the DNA-evidence and gunshot residue, the State presented Maricopa County medical examiner Alex Zhang who testified as an expert regarding the fatal gunshot wound in the victim's back.  (Respondents' Exh. C, Tr. Nov. 1, 2004 at 81-90.)  Defense counsel cross-examined the expert about the fact that the autopsy report did not mention a contact wound.  (*Id*. at 92-95.)  Defense counsel also challenged the medical examiner's testimony concerning inconsistencies in his statements about the distance of the gun from Robert's body at the time he was shot. (Respondents' Exh. D, Tr. Nov. 4, 2004 at 46.)  The expert explained that, after he prepared the autopsy report, he suspected that there might be soot around the wound, so he took a microscopic section that showed gunpowder stippling. (*Id*. at 94-95.)  Defense counsel moved to suppress and strike the expert's testimony from the record arguing that he was denied discovery of the State's evidence.  (*Id*. at 105.)  The prosecutor explained that he did not know until the expert testified that the doctor now believed the fatal shot was a contact, rather than a distant, wound.  (*Id*. at 109.) After considering argument, the trial court denied the motion, finding that defense counsel had been provided evidence sufficient to impeach the expert.  (*Id*. at 107-117.)

1      The jury also heard testimony from Ivory G., Charlotte L., Akina L., and Paul R. that

2   King had shot Robert W. and Ivory G. (Respondents' Exh. A, doc. 16-1 at 6-7.) Akina also

3   testified that she did not see an individual named Howard Jones with King the night of the

4   shootings. (Respondents' Exh. C, Tr. 11/1/2004 at 41-42.) Paul R. testified that he saw King

5   shoot the victims and that King started shooting with his hand in the pocket of his brown trench

6   coat. (*Id.* at 56, 59, 62.) Defense counsel presented Mary Ann Y. who testified that she was

7   in the AmVets Club the night of the incident and did not see King with a gun. (Respondents'

8   Exh. E, Tr. Nov. 3, 2004 at 62.) Defense counsel also presented Keith B. who testified that he

9   saw the shooting from his van outside the AmVets Club and that King was not the shooter and

10  that he saw an older man shoot the victims. (Respondents' Exh. E, Tr. Nov. 3, 2004 at 87-88,

11  94-97.)

12     The jury found King guilty of second degree murder and aggravated assault, both

13  dangerous offenses, and unlawful flight from a law enforcement vehicle. (Respondents' Exh.

14  A, doc. 16-1 at 2-3.) The jury found King not guilty of attempted murder. (*Id.*) After a hearing

15  regarding prior convictions, the court found that King had four historical prior felony

16  convictions. (Respondents' Exh. I at 16, Tr. Feb. 14, 2005.) The trial court subsequently heard

17  argument on a defense motion for new trial. Defense counsel argued that the manner in which

18  the victim's blood was distributed on King's coat indicated that King was "underneath, down

19  below," the victim and, therefore, the evidence presented did not support the jury verdict.

20  (Respondents' Exh. I, Tr. Feb. 14, 2005 at 3-5.) Defense counsel also argued that he had been

21  surprised by the contact wound testimony. (*Id.* at 5, 9-11.) The court denied the motion. (*Id.*

22  at 11.)

23     After the sentencing hearing, the court sentenced King to a presumptive 16-year term

24  on the murder conviction, and to concurrent presumptive prison terms on the aggravated assault

25  and unlawful flight convictions; with these sentences to run consecutive to the sentence for the

26  murder convictions. The longest of these sentences was 11.25 years. Therefore, the court

27  sentenced King to a total of 27.25 years imprisonment. (Respondents' Exh. I, Tr. Feb. 14, 2005

28  at 34-35.)

On direct review, King challenged the jury instructions, jury verdicts, an inconsistent statement by the medical examiner, a witness's refusal to cooperate, and the trial court's determination of aggravating factors at sentencing. (Respondents' Exh. A, doc. 16-1 at 8-16.) The appellate court rejected King's claims, affirmed his convictions, but modified the sentencing minute entry to reflect that unlawful flight was a non-dangerous offense. (Respondents' Exh. A, doc. 16-1.)   King filed a petition for review in the Arizona Supreme Court, and the Court denied the petition. (Respondents' Exh. J, doc. 18-5 at 2.)

On March 27, 2007, King filed a notice of post-conviction relief in the trial court pursuant to Ariz. R. Crim. P. 32.   (Respondents' Exh. K, doc. 18-5 at 5.) Post-conviction counsel filed an *Anders*[2] brief stating that he found no arguable claims of error.   (Respondents' Exh. L, doc. 18-5 at 9.)   King then filed a *pro se* petition presenting multiple claims of ineffective assistance of counsel and prosecutorial misconduct. He also asserted claims of newly discovered evidence and actual innocence. (Respondents' Exh. M, doc. 18-5 at 12-42.)  The court found King's claims of miscarriage of justice, prosecutorial misconduct, and "various constitutional claims" procedurally defaulted under Arizona Rule of Criminal Procedure 32.2 because King could have raised those claims on direct appeal. (Respondents' Exh. O, doc. 19-1 at 24-26)   The court also found that King failed to establish actual innocence or newly discovered evidence by "clear and convincing evidence" under Arizona Rule of Criminal Procedure 32.1(h).   (*Id.*) The trial court further found that King's claims of ineffective assistance lacked merit.

King sought review in the Arizona Court of Appeals of the trial court's denial of his claims of ineffective assistance of counsel. (Respondents' Exh. P, doc. 19-1 at 28-42.)  The appellate court summarily denied review. (Respondents' Exh. Q, doc. 19-1 at 44.) The Arizona Supreme Court also summarily denied review on October 21, 2010. (Respondents' Exh. R, doc. 19-1 at 47.)

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

1    On April 9, 2010, King filed a second notice of post-conviction relief, which the
2    court summarily dismissed as untimely. (Respondents' Exhs. S-T, docs. 19-1 at 49-52.)  King
3    filed a third notice of post-conviction relief on August 11, 2010, to which he attached an
4    affidavit of Lateef Islam, stating that an unidentified man with salt-and-pepper hair had been
5    the shooter.  (Respondents' Exh. U, doc. 19-1 at 54-55.)  On March 3, 2011, the court
6    summarily dismissed the notice as untimely finding that the affidavit did not constitute clear and
7    convincing evidence of King's innocence sufficient to excuse his untimely filing under Ariz.
8    R. Crim. P. 32.1(h).  (Respondents' Exh. V, doc. 19-1 at 57-58.)  King did not seek further
9    review in state court.

10    Instead, on October 24, 2011, King filed his petition for writ of habeas corpus
11    pursuant to 28 U.S.C. § 2254, which he amended on December 5, 2011.  (Docs. 1, 15.)  King
12    asserts that he is actually innocent, there is newly discovered evidence, prosecutorial
13    misconduct, miscarriage of justice, and ineffective assistance of counsel.

14    **II. Procedural Default**

15    Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless
16    the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To exhaust state
17    remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his
18    federal claims by "fairly presenting" them to the state's "highest" court in a procedurally
19    appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S.
20    27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner
21    must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to
22    the federal nature of the claim.").  In Arizona, unless a prisoner has been sentenced to death, the
23    "highest court" requirement is satisfied if the petitioner has presented his federal claim to the
24    Arizona Court of Appeals either through the direct appeal process or post-conviction
25    proceedings.  *Crowell v. Knowles* , 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing
26    *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).  A claim has been fairly presented
27    if the petitioner has described both the operative facts and the federal legal theory on which his
28    claim is based. *Baldwin*, 541 U.S. at 33.  A "state prisoner does not 'fairly present' a claim to

a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32.   In summary, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim . . . . " *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted when a petitioner raises a claim in state court but the state court finds the claim defaulted on procedural grounds.  *See Beard v. Kindler*, ___ U.S.___, 130 S.Ct. 612, 614-19 (2009).  In such cases, federal habeas corpus review is precluded if the state court opinion relies on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).  A state procedural default ruling is "independent" unless the application of the bar depends on an antecedent ruling on the merits of the federal claim.  *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985).  A state court's application of the bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).  If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6 (1989).

The second procedural default scenario arises when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  This type of procedural default is known as "technical" exhaustion because, although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas

1   petitioner who has defaulted his federal claims in state court meets the technical requirements

2   for exhaustion; there are no state remedies any longer 'available' to him.").

3          In either case of procedural default, federal review of the claim is barred absent a

4   showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*,

5   541 U.S. 386, 393-94, (2004); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

6          **A.  Grounds One and Three**

7          In Ground One, King asserts a claim of "manifest injustice actual innocence" in

8   violation of the Fifth, Sixth, and Fourteenth Amendments.  (Doc. 15 at 6.)   In Ground Three,

9   King asserts that there is newly discovered evidence indicating that he did not commit the

10  murder.  (Doc. 15 at 8.)  Although King presented these claims to the Superior Court on post-

11  conviction review, he never presented them to the Arizona Court of Appeals and the time to do

12  so has expired.  *See* Ariz. R. Crim. P. 32.9(c) (stating that a party has thirty days from the trial

13  court's ruling in which to seek appellate review).  Because King did not present his claims of

14  actual innocence and newly discovered evidence to the Arizona Court of Appeals and cannot

15  do so now, those claims are technically exhausted and barred from federal habeas corpus

16  review.  *See Roettgen v. Copeland*, 33 F.3d 26, 38 (9th Cir. 1994).  Accordingly, the Court will

17  not consider the merits of these claims unless King establishes "cause and prejudice" or a

18  "fundamental miscarriage of justice" to excuse the procedural bar, as discussed in Section C

19  below.

20         **B.  Grounds Four and Five**

21         In Ground Four, King asserts that the prosecutor engaged in misconduct.  In Ground

22  Five, he argues that there was a miscarriage of justice based on the actions or inactions of the

23  police and prosecutor.  (Doc. 15 at 9-10.)  King presented these claims to the trial court on post-

24  conviction review. (Respondents' Exh. O, doc. 19-1 at 25.)  The court found them procedurally

25  defaulted and barred from review pursuant to Arizona Rule of Criminal Procedure 32.2(a)(1)

26  because King "could have raised these claims on direct appeal but failed to do so." (*Id.*)

27  Arizona courts have consistently applied Arizona's procedural default rules.  *See Stewart v.*

28  *Smith*, 536 U.S. 856, 860 (2002) (holding that Arizona Rule of Criminal Procedure 32.2(a) is

1    an adequate and independent procedural bar); *Cook v. Schriro*, 538 F.3d 1000, 1026 (9th Cir.

2    2008) (stating that "[p]reclusion of issues for failure to present them at an earlier proceeding

3    under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because

4    they do not depend upon a federal constitutional ruling on the merits.'") (footnote omitted)

5    (quoting *Smith*, 536 U.S. at 860); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998)

6    (rejecting argument that Arizona courts have not "strictly or regularly" followed Rule 32).  The

7    state court's denial of King's claims on the basis of an adequate and independent state

8    procedural ground bars federal habeas corpus review.  *See Beard v. Kindler*, ___ U.S.___, 130

9    S.Ct. 612, 614-19 (2009); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S.

10   at 729-30; *Correll v. Stewart*, 137 F.3d 1404, 1417-18 (9th Cir. 1998) (stating that petitioner's

11   federal claim is procedurally barred under the independent and adequate state law-ground

12   doctrine, which forecloses federal habeas review when a state court has found a prisoner's

13   federal claim precluded based on his failure to meet a state procedural requirement).

14   Accordingly, the Court will not consider the merits of these claims unless, as discussed below,

15   King establishes "cause and prejudice" or a "fundamental miscarriage" to excuse the procedural

16   bar.

17                    **C.  Overcoming the Procedural Bar**

18            Federal review of King's defaulted claims is barred absent a showing of "cause and

19   prejudice" or a "fundamental miscarriage of justice."  *See Dretke v. Haley*, 541 U.S. 386, 393-

20   94, (2004).  To establish "cause," a petitioner must establish that some objective factor external

21   to the defense impeded his efforts to comply with the state's procedural rules.  *LeGrand* v.

22   *Stewart*, 133 F.3d 1253, 1261(9th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 488

23   (1986)).  A showing of interference by state officials, constitutionally ineffective assistance of

24   counsel, or that the factual or legal basis for a claim was not reasonably available, or may

25   constitute cause.  *Murray*, 477 U.S. at 488.  "Prejudice" is actual harm resulting from the

26   constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To

27   establish prejudice, a habeas petitioner must demonstrate that the alleged constitutional violation

28   "worked to his actual and substantial disadvantage, infecting his entire trial with error of

1  constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).  Where petitioner

2  fails to establish cause, the court need not reach the prejudice prong.

3        Here, although King generally asserts that his ability to articulate his claims is

4  limited by "institutional restrictions" and the "minimal availability of research material," he has

5  not made a sufficient showing of cause or prejudice.  (*See* doc. 22 at 4.)  Petitioner's status as

6  an inmate and lack of legal knowledge do not constitute cause for his failure to properly present

7  his claims to the Arizona courts.  *See Hughes v. Idaho State Board of Corrections*, 800 F.2d

8  905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's lack of legal assistance did

9  not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381

10 (9th Cir. 1988) (finding that petitioner's reliance on jailhouse lawyers did not constitute cause).

11       A federal court may also review the merits of a procedurally defaulted claim if

12 petitioner demonstrates that failure to consider the merits of his claim will result in a

13 "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

14 "fundamental miscarriage of justice" occurs when a constitutional violation has probably

15 resulted in the conviction of one who is actually innocent.  *Id.*  To satisfy the "fundamental

16 miscarriage of justice" standard, petitioner must establish that it is more likely than not that no

17 reasonable juror would have found him guilty beyond a reasonable doubt in light of new

18 evidence. *Id.* at 327; 28 U.S.C. § 2254(c)(2)(B).  Although King alleges actual innocence and

19 fundamental miscarriage of justice, he raises them as substantive claims, not as a basis for

20 excusing his procedural default.  Moreover, even if he asserted a fundamental miscarriage of

21 justice to overcome the procedural bar, his claim fails.

22       The only newly discovered evidence in the record are the affidavits of Tommy

23 Works and Lateef Islam stating that King was not the shooter.  (Respondents' Exh. U, doc. 19-1

24 at 54; Exh. W, doc19-1 at 60-61.)  Works' affidavit is dated December 20, 2006, and Islam's

25 is dated June 20, 2010.  Because Works and Islam did not come forward with the information

26 in their affidavits until four and eight years after the incident, the trustworthiness of their

27 statements is questionable.  *See Schlup*, 513 U.S. at 316, 324 (stating that to present a credible

28 claim of actual innocence under the gateway exception, the petitioner must present "new

1  reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness
2  accounts, or critical physical evidence - that was not presented at trial.").

3          Additionally, King has not established that it is more likely than not that no
4  reasonable juror would have found him guilty beyond a reasonable doubt in light of the
5  affidavits.  *Id.* at 327; 28 U.S.C. § 2254(c)(2)(B).  At trial, the jury heard the testimony of
6  multiple witnesses that King was the shooter, forensic evidence that King was the shooter, and
7  testimony describing King's post-shooting flight, which suggested his guilt.  (Respondents'
8  Exh. A, doc. 16-1.) Defense counsel presented two witnesses who testified that King did not
9  have a gun and did not shoot the victims.  Considering the weight of the State's evidence, the
10 Court cannot conclude that it is more likely than not that no reasonable juror would have found
11 King guilty in light of the affidavits of two witnesses provided four and eight years after the
12 incident.

13         In summary, King has not shown a basis for overcoming the bar to the defaulted
14 claims.  Thus, the Court will not consider the merits of those claims.

## III.  Discussion

16         The record reflects, and Respondents do not dispute, that Petitioner properly
17 presented his Sixth Amendment claims of ineffective assistance to the state court and that those
18 claims are properly before this Court on habeas corpus review.  Thus, the Court will consider
19 the merits of those claims.

### A.  Standard of Review

21         This Court's review of King's claims is constrained by the applicable standard of
22 review set forth in 28 U.S.C. § 2254(d).  If a habeas corpus petition includes a claim that has
23 been "adjudicated on the merits in State court proceedings," federal habeas relief is not
24 available unless petitioner shows that the state court's decision "was contrary to" federal law
25 as clearly established in the holdings of the United States Supreme Court at the time of the state
26 court decision, § 2254(d)(1); *Greene v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011); or that it
27 "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an
28 unreasonable determination of the facts" in light of the record before the state court, §

1    2254(d)(2). *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 785 (2011). This is a "difficult

2    to meet," *Id. at 786*, and "highly deferential standard for evaluating state-court rulings, which

3    demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

4    U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation marks omitted).

5            To determine whether a state court ruling was "contrary to" or involved an

6    "unreasonable application" of federal law, courts look exclusively to the holdings of the

7    Supreme Court which existed at the time of the state court's decision. *Greene*, 132 S.Ct. at 44.

8    A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts

9    the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are

10   materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

11   at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14

12   (2003) (citations omitted).

13           A state court decision is an "unreasonable application of" federal law if the court

14   identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular

15   case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim

16   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the

17   correctness of the state court's decision.'" *Richter*, 562 U.S.___, 131 S.Ct. at 786 (citing

18   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "'[E]valuating whether a rule application

19   was unreasonable requires considering the rule's specificity. The more general the rule, the

20   more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.*

21                              **B.  Ineffective Assistance of Counsel**

22           The controlling Supreme Court precedent on claims of ineffective assistance of

23   counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must

24   show that counsel's performance was objectively deficient and that counsel's deficient

25   performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must

26   fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at

27   690. When reviewing counsel's performance, the court engages a strong presumption that

28   counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A

1    fair assessment of attorney performance requires that every effort be made to eliminate the

2    distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

3    and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of

4    counsel's performance is extremely limited. Acts or omissions that "might be considered sound

5    trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

6             To establish a Sixth Amendment violation, petitioner must also establish that he

7    suffered prejudice as a result of counsel's deficient performance. *Id.* at 691-92. To show

8    prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different. A reasonable

10   probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See*

11   *also Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir. 1998). The prejudice component "focuses on

12   the question whether counsel's deficient performance renders the result of the trial unreliable

13   or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The

14   court need not address both *Strickland* requirements if the petitioner makes an insufficient

15   showing on one. *See Strickland*, 466 U.S. at 697 (explaining that "[i]f it is easier to dispose of

16   an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

17   followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy

18   either prong of the *Strickland* test obviates the need to consider the other.").

19            "'Surmounting *Strickland's* high bar is never . . . easy.'" *Richter*, 562 U.S.___, 131

20   S.Ct. 770, 786 (quoting *Padilla v. Kentucky*, 559 U.S.___, 130 S.Ct. 1473, 1485 (2010)).

21   Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is

22   even more difficult, because both standards are "highly deferential," and because *Strickland's*

23   general standard has a substantial range of reasonable applications. *Richter*, 562 U.S.___, 131

24   S.Ct. at 788 (citations omitted). The issue under § 2254(d) is not whether counsel's actions

25   were reasonable, but "whether there is any reasonable argument that counsel satisfied

26   *Strickland's* deferential standard." *Id.*

27   / / /

28   / / /

**C. Analysis**

On post-conviction review, King challenged various aspects of counsel's representation including: pretrial preparation, witness interviews and selection, discovery challenges, cross-examination of witnesses, and presentation of evidence. (Respondents' Exh. M at 23-26, doc. 18-5 at 12-42.) The state court found that King failed to state a colorable claim of ineffective assistance of counsel. (Respondents' Exh. O, doc. 19-1 at 24-26.) King has not shown his counsel's performance was deficient, or that it resulted in any prejudice. Therefore, he has not shown that the state court's determination of his ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*. 28 U.S.C. § 2254(d).

**1.  Failure to Investigate and Present Witness Testimony**

King argues that defense counsel was ineffective for failing to interview and secure the presence of Keith Brown and Roosevelt White at trial. (Doc. 15 at 7.) King first argues that counsel was ineffective for failing to interview and secure an affidavit from eyewitness Keith Brown who told defense counsel's investigator, Art Hanratty, that he witnessed the entire incident and King was not the shooter. (*Id.*) King further contends that Roosevelt White, the manager of the AmVets bar, told the investigator that he witnessed King's cousin, Howard Jones, commit the shooting. (*Id.*) King asserts that counsel was ineffective because he did not obtain an affidavit from White to this effect and failed to locate White to testify at trial.

King next argues that counsel failed to secure Craig Gary's appearance at trial. Craig Gary allegedly told the investigating police officers that he witnessed "a second person [shoot] Robert Williams." (Doc. 15 at 7.) King contends that a "server attempted to serve Craig Gary 3 different times and . . . said it's clear he's ducking. . . ." (*Id.*)

"In analyzing the performance of counsel, judicial scrutiny is deferential." *Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir.2010). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. At the same time, a defense lawyer must make reasonable investigations in the course of representation. *Id.* at 691. "Counsel's investigation must, at a minimum, permit informed decisions about how best to represent the client." *Cox*,

588 F.3d at 1046 (citing *Sanders v. Ratelle*, 21 F.3d 1446, 1345 (9th Cir. 1994)).  But "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

The Court cannot determine whether counsel interviewed Craig Gary.   However, the record reflects that defense counsel, though a private investigator, interviewed Keith Brown and Roosevelt White.  (Respondents' Exh. N, doc. 19-1 at 16-18.)  It follows that defense counsel reviewed the information obtained during those interviews and made a strategic decision not to offer their testimony.  King has not offered any argument or evidence suggesting otherwise.  In view of the great deference afforded to defense counsel's tactical decisions made after investigation of the case, defense counsel's determinations regarding whether to present Brown and White at trial were objectively reasonable.  *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (1985).

Even assuming defense counsel's performance was deficient for failing to present the testimony of Brown and White and for failing to locate and interview Gary, King has not established prejudice. To show prejudice from counsel's failure to call a witness to testify, a petitioner must identify the witness, *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985),  show that the particular witness was willing to testify, *United States v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988), what the witness's testimony would have been, *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987), and that the testimony would have been sufficient to create a reasonable doubt as to guilt. *Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir.1990).

Here, relying on hearsay, King provides a very general description of the testimony that Brown, White, and Gary would have given at trial.   However, this is insufficient.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991). In *Dows v. Woods*, 211 F.3d 480 (9th Cir. 2000), the Ninth Circuit rejected an ineffectiveness claim based on trial counsel's failure to interview or call an alibi witness when there was no evidence in the record,

other than the petitioner's own "self-serving affidavit," that the witness would have testified favorably for the defense. *Id*. at 486. The Ninth Circuit explained: "Dows provides no evidence that this witness would have provided helpful testimony for the defense—i.e., Dows has not presented an affidavit from this alleged witness." *Id*. (internal citations and quotation marks omitted).   King has not provided any evidence that Brown, White, and Gary would have testified at his trial in the manner set forth in his Petition.

Moreover, King has not shown that the testimony of those witnesses would have been sufficient to create a reasonable doubt as to his guilt.  Even though Brown, White, and Gary, did not testify, the jury heard testimony that King did not have a gun and that someone else shot the victims.  (Respondents' Exh. E, Tr. Nov. 1 2004 at 62, 87-88, 94-97.) Additionally, the jury acquitted King of the attempted murder charge.  King has not shown that there is a reasonable probability that counsel's purported failure to interview and present the testimony of Brown, White, and Gary affected the result of the trial.  Thus, King has not shown that the state court's rejection of his claims of ineffective assistance of counsel claim was contrary to, or an unreasonable application of *Strickland*.  28 U.S.C. § 2254(d).

### 2.  Use of Evidence - Clothing

King argues that defense counsel was ineffective for failing to secure and test his "bloody clothing that was being held in the County Jail property room" to show that King had too much blood on him to have shot the victim in the back and to confirm that King was underneath the victim when he was shot.  (Doc. 15 at 7, 11.)  King does not identify what articles of clothing defense counsel should have tested.  King's unsupported, conclusory allegations are insufficient to support a claim for federal habeas relief. *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations with no reference to the record or other evidence do not warrant habeas relief.)  Additionally, because King fails to allege specific facts showing prejudice, the reasonableness of counsel's representation is inconsequential.  *Hill v. Lockhart*, 474 U.S. 52, 60 (1985).  Even assuming that defense counsel's performance was deficient for failure to obtain and test some of King's clothing, he was not prejudiced because counsel presented the same theory of defense based on King's coat.

1  (Respondents' Exh. D, Tr. Nov. 2, 2004 at 19-22, 123-124; Exh. G, Tr. Nov. 8, 2004 at 49, 51,

2  64-67.)  Counsel argued that the distribution of the blood on the coat showed that King was

3  underneath the victim and therefore, he could not have shot the victim in the back.  (*Id.*)

4  Counsel again raised the issue of blood spatter on a motion for new trial.  (Respondents' Exh.

5  I, Tr. Feb. 14, 2005 at 3-5.)  Although the jury and the court rejected this theory, King has not

6  shown that his counsel failed to pursue it or that his representation was ineffective.

7  ### 3. Violation of *Brady v. Maryland*, 373 U.S. 83 (1963)

8  King also argues that counsel was ineffective for failing to allege a *Brady* violation

9  based on the medical examiner's testimony at trial which differed from a recorded interview.

10  (Doc. 15 at 11.) King contends that the medical examiner, Alex Zhang, stated in a recorded

11  interview that the fatal wound to Robert Williams "was shot 2 to 3 feet from the victim and that

12  it was a distant wound," but testified at trial that the fatal wound was "a contact wound." (Doc.

13  15 at 11.)  After the medical examiner testified, defense counsel moved to suppress the expert's

14  testimony and have it stricken from the record on the ground that the defense was denied

15  discovery of the State's evidence.  (Respondents' Exh. C, Tr. Nov. 1, 2004 at 104-105.)  The

16  prosecutor explained that he did not know until the medical examiner testified that he now

17  believed that the fatal wound was a contact, rather than a distant, wound.  (*Id.* at 109.) After

18  hearing argument from both sides, the trial court denied the motion finding that the defense had

19  been provided evidence sufficient to impeach the witness.  (*Id.* at 107-09.)  Because the record

20  establishes that defense counsel challenged the State's apparent failure to disclose information

21  about the medical examiner's opinions, King cannot show that his counsel was ineffective on

22  this basis.

23  Moreover, King has not shown that an underlying *Brady* violation occurred because

24  there is no evidence in the record that the government suppressed favorable evidence. *Brady*,

25  373 U.S. at 87.  *See United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985)

26  (explaining that "[s]uppression by the government is a necessary element of a *Brady* claim . .

27  . .").  Because defense counsel's challenge to the State's purported failure to disclose evidence

28  regarding the medical examiner's opinion was objectively reasonable, and because the record

1   does not indicate that a *Brady* violation occurred, King's claim of ineffective assistance based

2   on a *Brady* violation fails.

### 4. Failure to Present Expert Testimony

4       King further asserts that defense counsel was ineffective for failing to secure an

5   expert to rebut Alex Zhang's testimony.  King, however, does not identify a particular expert

6   whose testimony defense counsel should have obtained.  Nor has King established that an expert

7   would have been available and willing to testify at his trial.  King merely speculates that the

8   testimony of an unidentified expert would have supported his defense.  In *Wildman v. Johnson*,

9   261 F.3d 832, 839 (9th Cir. 2001), the Ninth Circuit rejected a similar claim of ineffective

10  assistance based on counsel's failure to retain an expert.  There, the Court explained that

> Wildman has not shown that his case was prejudiced as a result of not
> retaining an arson expert.  Wildman offered no evidence that an arson
> expert would have testified on his behalf at trial.  He merely speculates
> that such an expert could be found.  Such speculation, however, is
> insufficient to establish prejudice.  See *Grisby v. Blodgett*, 130 F.3d 365,
> 373 (9th Cir. 1997) (speculating as to what expert would say is not
> enough to establish prejudice).

15  *Wildman*, 261 F.3d at 839.

16      Similar to *Wildman*, King's claim of ineffective assistance based on counsel's failure

17  to retain an expert fails because he has neither identified a specific expert who would have

18  testified at trial nor described the testimony that the unidentified expert would have given.  *See*

19  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (explaining that "complaints of uncalled

20  witnesses are not favored in federal habeas corpus review because allegations of what the

21  witness would have testified are largely speculative . . . .  In addition, for [petitioner] to

22  demonstrate the requisite *Strickland* prejudice, [he must show not only that [the] testimony

23  would have been favorable, but also that the witness would have testified at trial.") (citations

24  omitted).  *See also United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (rejecting

25  claim of ineffective assistance based on counsel's failure to call a witness who would have

26  taken responsibility for a gun found in defendant's possession because, *inter alia*, "[t]here is no

27  evidence in the record which establishes that Washington would testify in [petitioner's] trial.");

28  *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985) (rejecting claim of ineffective

1  assistance because petitioner did not "identify any witnesses that his counsel should have called
2  that could have been helpful.").

### 5.  Failure to Obtain Toxicology Report

4          King next argues that counsel was ineffective for failing to secure a toxicology
5  report to determine whether Ivory Gary was under the influence of alcohol and cocaine at the
6  time of the incident because such evidence would have supported King's statement that "[t]he
7  victims were aggressive and out of control." (Doc. 15 at 11.)  During the sentencing hearing,
8  the court inquired about evidence of Ivory Gary's intoxication.  (Respondents' Exh. I, Tr. Feb.
9  14, 2005 at 22-23.) Counsel explained that he had considered presenting such evidence, but
10  decided not to because it was inconsistent with his defense theory.  (*Id.* at 23.)

11          "In analyzing the performance of counsel, judicial scrutiny is deferential." *Cox v.*
12  *Ayers*, 613 F.3d 883, 893 (9th Cir.2010). "[C]ounsel is strongly presumed to have rendered
13  adequate assistance and made all significant decisions in the exercise of reasonable professional
14  judgment." *Strickland*, 466 U.S. at 690. At the same time, a defense lawyer must make
15  reasonable investigations in the course of representation.  *Id.* at 691. "Counsel's investigation
16  must, at a minimum, permit informed decisions about how best to represent the client." *Cox*,
17  588 F.3d at 1046. But "strategic choices made after thorough investigation of law and facts
18  relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.  Here,
19  counsel's strategic decision not to present evidence of the victim's intoxication, made after
20  investigation of the case, was objectively reasonable.  Petitioner has not shown that the state
21  court's rejection of this claim of ineffective assistance of counsel was contrary to, or an
22  unreasonable application of, *Strickland*. *See* 28 U.S.C. § 2254(d).

### 6.  Conclusion

24          In summary, given the deference afforded to counsel's strategic decisions, and the
25  strength of the State's case, counsel's decisions regarding trial preparation and cross-
26  examination were objectively reasonable.  *Rodriguez-Rameriz*, 777 F.2d at 458.  Moreover,
27  even if counsel's performance was deficient, Petitioner has not carried his burden of showing
28  "that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." 466 U.S. at 694 (emphasis added).  The State presented testimony of numerous eyewitnesses who observed the shooting.  King had gunshot residue on his hands, blood from one of the victim's on his coat, and a bullet hole in the pocket of his coat from which the weapon had been fired.  Additionally, King fled the scene and tried to avoid police.  Thus, even if counsel's performance was deficient, King has not shown that there is a "reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." 466 U.S. at 694; *Hart*, 174 F.3d at 1069.

Petitioner is not entitled to federal habeas relief on his claims of ineffective assistance of counsel.  The Court cannot conclude that the state court's denial of King's claims was contrary to or an unreasonable application of federal law, or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).  Accordingly, King is not entitled to habeas corpus relief.[3]

In accordance with the foregoing,

**IT IS RECOMMENDED** that King's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 15) be **DENIED and DISMISSED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma paupers on appeal be denied because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because King has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

---

[3] To the extent that King's Reply can be construed as requesting an evidentiary hearing (Doc. 22 at 6), that request should be denied because a hearing is not required in his case. King has not alleged any material fact, which he did not have a full and fair opportunity to develop in state court and which if proved, would show his entitlement to habeas relief. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398 (2011) (explaining that scope of the record for 28 U .S.C. § 2254(d)(1) inquiry is limited to the record that was before the state court that adjudicated the claim on the merits), *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that if record refutes applicant's factual allegations or otherwise precludes habeas relief, court not required to hold evidentiary hearing).

1  Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

2  parties shall have fourteen days from the date of service of a copy of this recommendation

3  within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed.

4  R. Civ. P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to

5  the objections.   Failure to file timely objections to the Magistrate Judge's Report and

6  Recommendation may result in the acceptance of the Report and Recommendation by the

7  District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

8  (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate

9  Judge may be considered a waiver of a party's right to appellate review of the findings of fact

10 in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed.

11 R. Civ. P. 72.

12          DATED this 10th day of August, 2012.

14  _____
15                     Bridget S. Bade
16              United States Magistrate Judge